UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal Case No. 06-310 (EGS) |
| | : | |
| v. | : | Sentencing Date: March 2, 2007 |
| | : | |
| **ANDRE O. ALSOP,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

### GOVERNMENT'S MEMORANDUM ON THE AMOUNT OF LOSS TO THE GOVERNMENT

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in determining the amount of loss to the Government in this case.

1. Pursuant to a plea agreement, Defendant pled guilty on November 7, 2006, to False Statements to Obtain Federal Employees Compensation, in violation of Title 18 U.S.C. Section 1920.

2. The Court allowed both the Government and the Defendant to present evidence on the amount of loss to the Government.

3. The Government has calculated that the amount of its loss is $123,289.29.[1]

4. The above calculation is based upon surveillance conducted by Special Agent Sonja L. Scott of the U.S. Government Printing Office, Office of the Inspector General. A Statement signed by Agent Scott is attached as Government's Exhibit 1. This Statement details Agent Scott's

---

[1] We note that, in paragraph 3 of the plea agreement signed by the parties and filed with the Court on November 7, 2006, the amount of loss to the Government upon which the Sentencing Guidelines were originally calculated in this case was "between $70,000 and $120,000." In that agreement, however, "the parties also agreed that the below totals are contingent upon the final damages and loss analysis that will be performed in part by the Office of Workers' Compensation Program[s]."

surveillance of the Defendant at Investors Real Estate (IRE) in Largo, Maryland, on fifteen separate occasions between April 2005 and September 2006, as well as Agent Scott's interviews of real estate agents at IRE who stated that the Defendant was at IRE in the evenings, some Saturdays, and at the monthly staff meetings on Wednesday night.

5. The above calculation is also based upon the formulations of Deputy Director Edward Duncan of the U.S. Department of Labor, Office of Workers' Compensation Programs, Division of Federal Employees' Compensation. A Statement signed by Mr. Duncan is attached as Government's Exhibit 2. Using a formula to calculate how an individual's earnings reduce compensation entitlement, and conducting a wage survey for the Defendant's position at IRE based upon the information provided to him by Agent Scott, Mr. Duncan determined that – had the Defendant reported his average weekly wage at IRE – the Defendant's total compensation benefits from January 2002 through September 2006 would have been $138,489.56. Because the Defendant did not report his wages at IRE, however, the Defendant actually received compensation based upon total disability in the amount of $261,778.85.

6. By subtracting what the Defendant should have received from the Government ($138,489.56) from what the Defendant actually received from the Government ($261,778.85), the Government has calculated that its amount of loss (the excess compensation benefits received by the Defendant) is $123,289.29

7. The Government believes that this amount most accurately reflects its amount of loss, and it respectfully asks the Court to accept this loss calculation in determining the appropriate sentence in this case.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY
        D.C. BAR NO.  498-610


By: _____
        AARON H. MENDELSOHN
        ASSISTANT UNITED STATES ATTORNEY
        D.C. BAR NO. 467-570
        FEDERAL MAJOR CRIMES SECTION
        (202) 514-9519


## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I will cause a copy of the foregoing memorandum and exhibits to be served upon the attorney for the defendant, Robert W. King, Esquire, 9111 Edmonston Road, Suite 402, Greenbelt, Maryland, 20770, this 10th day of January, 2007.


_____
AARON H. MENDELSOHN
ASSISTANT UNITED STATES ATTORNEY

# EXHIBIT 1

Case 1:06-cr-00310-EGS   Document 10-2   Filed 01/10/2007   Page 1 of 4



**United States Government Printing Office**
**Office of The Inspector General**
**Office Of Investigations**
Washington, DC 20401

## STATEMENT

I, Sonja L. Scott, Special Agent with the U.S. Government Printing Office, Office of the Inspector General, make the following statement freely and voluntarily:

I began investigating Mr. Andre Alsop (SUBJECT) for workers' compensation fraud in February 2005 after receiving information from our contractor, US Investigations Services, that SUBJECT had a real estate license and was working for Mr. Vincent Deal at Investors Real Estate (IRE) in Largo, Maryland. I conducted surveillance 22 times at Investors Real Estate and saw him on the following 15 occasions:

April 27, 2005: 11:50 a.m. – I arrive at IRE- Andre Alsop (SUBJECT)'s vehicle, a Nissan Pathfinder with Maryland handicap tags "Cheapo" in front of building. 12:20 a.m., SUBJECT exits building, gets in vehicle, and drives to Post Office one mile away. 12:35, SUBJECT leaves post office. Special agents lose him in traffic.

May 16, 2005: 2:00 p.m.-I observe SUBJECT's black Mercedes with Maryland handicap tags 23163 in front of IRE. 2:55: Black couple enters IRE, 3:05: couple leaves IRE, 3:15 p.m.: SUBJECT and Mr. Deal walk up sidewalk to the Corporate Café. 3:20 p.m.: they leave Corporate Café and return to IRE. Surveillance ends at 4:00 p.m.

May 19, 2005: 2:00 p.m. – SUBJECT's black Mercedes seen at IRE. 4:00 p.m.- Mr. Deal seen leaving IRE in silver BMW 750 LI. 4:28 p.m – Deal returns to IRE. 4:35 p.m. – Surveillance concludes with Mr. Deal and SUBJECT still at IRE.

May 23, 2005: 1:30 p.m. begins– IRE dark with no activity. 1:40 p.m.- SUBJECT drives up and enters IRE. 3:30 p.m. – surveillance concludes and SUBJECT only person at IRE.

June 6, 2005: 2:10 p.m. – SUBJECT's Nissan Pathfinder at IRE when surveillance begins. 3:40 p.m. – Surveillance ends and SUBJECT still at IRE.

June 7, 2005: 1:30 p.m. - SUBJECT's Nissan Pathfinder at IRE when surveillance begins. 3:30 p.m. - Surveillance ends and SUBJECT still at IRE.

June 8, 2005: 1:45 p.m. – SUBJECT arrives at IRE driving Nissan Pathfinder. He gets out of

**GPO**
U.S. GOVERNMENT
PRINTING OFFICE
KEEPING AMERICA INFORMED

**United States Government Printing Office**
Office of The Inspector General
Office Of Investigations
Washington, DC 20401



vehicle carrying a backpack and enters IRE. 2:00 p.m. – exits IRE, checks mail at mailbox and re-enters IRE. 2:30 p.m. – Surveillance ends and SUBJECT still at IRE.

June 21, 2005: 2:30 p.m. - Subject arrives at IRE. UPS delivery with a box marked "Dell" at 2:45 p.m. Surveillance ends at 3:30 p.m. and SUBJECT still at IRE.

June 27, 2005: 2:10 p.m. – SUBJECT arrives at IRE in Nissan Pathfinder and enters building. 2:30 p.m.- Surveillance ends.

July 7, 2005: 2:30 p.m. - Sent Special Agent **undercover** into IRE and he speaks with SUBJECT about purchasing a property. SUBJECT informs him that he needs to complete a credit application. SUBJECT will then send the application to a loan officer he uses regularly. Finally, SUBJECT tells him to come back or call anytime because "I'm here just about every day."

July 28, 2005: Agents observed SUBJECT leaving IRE at 2:05 p.m. with a female, getting into his Nissan Pathfinder, and driving to a nearby restaurant. They were at the restaurant unit 3:50 p.m. They then returned to IRE. Special agents then served **subpoenas** at 4:05 p.m. to SUBJECT and Mr. Deal at IRE. Agents spoke to female who said that she was signing a real estate contract with SUBJECT, but she would not provide her name because she did not want to get involved with the investigation.

August 8, 2005: 11:30 a.m. - SUBJECT's Nissan Pathfinder seen at IRE. Surveillance not continued due to other case work that day.

September 20, 2005: Not surveillance. Agents from the Government Printing Office, Office of the Inspector General (OIG) and the Department of Labor OIG served **search warrants** at IRE and SUBJECT's residence at 821 Postwick Road, Bowie, Maryland 20716 at 8:00 a.m. No one was present at either location.

June 26, 2006: 3:00 p.m. - GPO Agents met at parking lot near IRE for another case. SUBJECT arrived at IRE at 3:04 p.m. He was still there at 4:30 p.m. when agents went by lot again.

September 12, 2006 – Surveillance performed by DOL OIG at IRE. SUBJECT's Nissan Pathfinder was seen there at 4:30 p.m.

September 13, 2006 – Surveillance performed at IRE by GPO OIG from 2:00 p.m.-3:00 p.m.– SUBJECT's Nissan Pathfinder was at site.




**United States Government Printing Office**
Office of The Inspector General
Office Of Investigations
Washington, DC 20401

I contacted all of the real estate agents that work at IRE. They all stated that they were part time so their contact with SUBJECT was limited, but that they saw him at IRE in the evenings, some Saturdays, and at the monthly staff meetings on Wednesday nights. The only person who claimed SUBJECT did not work at IRE was his supervisor, Mr. Deal. It should be noted that Mr. Deal worked with SUBJECT several years ago at the GPO and is a friend of SUBJECT's.

Based on my 15 surveillances which showed SUBJECT arriving at IRE between 1:30 p.m. and 2:00 p.m., and remaining at IRE until after surveillance ended at 4:00 p.m., the statements of the IRE real estate agents that they saw him at the office in the evenings, and the statement he told our undercover agent that he is at IRE "almost every day," I believe that SUBJECT works at least five hours per day. This does not include the Saturdays that IRE agents saw him at the office. I believe this is a conservative estimate based on the evidence of this case.

I have read this statement, consisting of 3 pages, and I declare under penalty of perjury that it is true and correct to the best of my knowledge (Public Law 94-550, 94th Congress). I have signed or initialed each and every page after I have been given the opportunity to make any corrections or additions.

| 1/8/07 | 10:50 AM | _[signature]_ |
|--------|----------|---------------|
| Date   | Time     | Signature     |

Page 3 of 3

# EXHIBIT 2

Case 1:06-cr-00310-EGS    Document 10-3    Filed 01/10/2007    Page 1 of 4

 

# RECORD OF SWORN STATEMENT

UNITED STATES DEPARTMENT OF LABOR
OFFICE OF INSPECTOR GENERAL
OFFICE OF LABOR RACKETEERING & FRAUD INVESTIGATIONS

Office: __WRO - OLRFI__          File __11-0460-0100-PC__

City: __Washington__             Date: __1/9/07__

State: __D.C.__                  Time: __5:00 p.m__

I, __Edward G. Duncan__ ACKNOWLEDGE THAT THE ABOVE NAMED AGENT HAS IDENTIFIED HIMSELF TO ME AS AN OFFICER OF THE UNITED STATES DEPARTMENT OF LABOR, OFFICE OF INSPECTOR GENERAL, AUTHORIZED BY LAW TO ADMINISTER OATHS, AND TAKE TESTIMONY IN CONNECTION WITH AUTHORIZED CRIMINAL INVESTIGATIONS. HE HAS INFORMED ME THAT HE DESIRES TO TAKE MY SWORN STATEMENT REGARDING

MY STATEMENT IS BEING MADE FREELY AND VOLUNTARILY, AND WITHOUT ANY COERCION.

__Edward G. Duncan__, Being duly sworn, deposes and states:

I am writing this affidavit in reference to the workers' compensation claim of Mr. Andre Alsop. Mr. Alsop was employed as a Computer Specialist at the Government Printing Office in Washington, D.C. He filed notice of traumatic injury on February 20, 1998, and has been receiving compensation benefits for total disability as a result of his accepted work-related condition, from June 12, 1998 to the present. Mr. Alsop's benefits are based on a February 20, 1998 date of injury pay rate of $1,255.69 per week, from his federal employment as a GS 13 Step 6. Disability benefits were paid at 75% of the pay rate.

Our program procedures require claimants to report earnings from employment, self-employment, or involvement in a business enterprise, as earnings serve to reduce compensation entitlement. Claimants are provided CA-1032 questionnaires on a regular basis to report any earnings. Mr. Alsop completed forms CA-1032 on June 20, 2002, May 23, 2003 and October 3, 2005. On all three forms, Mr. Alsop denied any form of employment or earnings during the 15 month period preceding completion. It has now been determined that Mr. Alsop failed to report his earnings beginning on approximately January 1, 2002.

Our procedures specifically call for the claims examiner to delete continuing compensation payments from the automatic roll upon report of earnings. Had Mr. Alsop reported his full earnings, total disability payments should have been terminated and a determination made as to his loss of wage earning capacity.

To determine how earnings reduce compensation entitlement, the Office utilizes the "Shadrick formula." This formula compares the claimant's actual earnings to what he would be earning currently in his federal position, had the injury not occurred. This method of comparison is more advantageous to the claimant than a complete offset of earnings.

Had Mr. Alsop remained in his date of injury GS 13 step 6 position with the Government Printing Office, his income as of January 1, 2002 would have been $77,266.00 per annum. This equates to a weekly pay rate of $1,485.88(77,266/52).

Although evidence exists of Mr. Alsop's employment, his exact earnings are unknown. Mr. Alsop began working on approximately January 1, 2002 as a Real Estate Office Manager, for at least 25 hours per week. The OWCP Washington, D.C. local office's rehabilitation specialist conducted a wage survey for the position of Real Estate Office Manager in Prince George's County, Maryland. He concluded that an hourly pay rate of $27.83 was the most fairly representative pay for this position. Therefore, for purposes of this calculation, the best estimate of Mr. Alsop's earnings are 25 hours per week x $27.83 per hour, or $695.75. Had OWCP known of this work, Mr. Alsop's benefits from January 1, 2002 to September 30, 2006, would have been $138,489.56. However, OWCP was not made aware of his work activities and paid him total disability in the amount of $261,778.85.

Statement of _____    Date: __1/09/07__

Therefore, as the government paid Mr. Alsop $261,778.85 in compensation from January 1, 2002 through September 30, 2006, while his best estimated entitlement was $138,489.56, the excess amount was $123,289.29. This figure represents the best estimate of actual loss to the government.

Statement of _____　　　Date: 1/09/07

I HAVE READ (OR HAD READ TO ME) THE FOREGOING STATEMENT, CONSISTING, OF __3__ PAGES. I HAVE BEEN GIVEN AN OPPORTUNITY TO MAKE CORRECTIONS. THIS STATEMENT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

_____
Deponent's Signature

Subscribed and sworn before:

_____
Special Agent

Date: 1/9/07

Witnessed by: _____ 1/9/07
Title: Spec. Agent.